IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

<table>
<tr><td>JOHN TROMPETER, on behalf of<br>himself and all others similarly<br>situated,<br><br>        Plaintiff,<br><br>   v.<br><br>ALLY FINANCIAL, INC., a Delaware<br>corporation and DOES 1 to 20,<br>inclusive,<br><br>        Defendants.<br>═══════════════════════════/</td><td>No. C 12-00392 CW<br><br>ORDER DENYING<br>DEFENDANT'S MOTION<br>TO COMPEL<br>ARBITRATION AND<br>MOTION FOR STAY<br>(Docket Nos. 10<br>and 17)</td></tr>
</table>

Plaintiff John Trompeter has filed a putative class action against Defendant Ally Financial, Inc., alleging that Ally had a policy and practice of secretly recording telephone calls with persons located in California without their consent.  Trompeter alleges in his First Amended Complaint two causes of action under this state's Invasion of Privacy Act, California Penal Code § 632, and the state Unfair Competition Law (UCL), California Business and Professions Code section 17200 et seq.  Trompeter seeks to represent all consumers who received a telephone call in which at least one party was in California and that telephone call was recorded or monitored without prior warning or consent.

Ally has moved to compel arbitration based on an arbitration agreement contained in the consumer contract to which Trompeter is a signatory and which was assigned to Ally.  Docket No. 10. Trompeter opposes the motion.  In addition, Ally has moved to stay

the Court's resolution of the motion, pending the California Supreme Court's decision on the appeal of Sanchez v. Valencia Holding Company, LLC, 201 Cal. App. 4th 74 (2011), petition for review granted, 272 P.3d 976 (2012).  Docket No. 17.  Trompeter opposes the motion to stay.  The Court held a hearing on Ally's motion to compel arbitration, but took the motion for a stay under consideration on the papers.  Having considered all of the parties' submissions and oral argument, the Court denies Ally's motion to compel arbitration and its motion to stay the proceedings pending the state Supreme Court's resolution of Sanchez.

BACKGROUND

On May 11, 2007, Trompeter purchased a new Chevrolet Silverado truck from a dealership in Colma, California.  Trompeter secured financing through the dealership.  Soon after Trompeter executed the retail installment sales contract, the dealership assigned the contract to Ally.  When Trompeter later defaulted on the contract by failing to make the required payments, Ally repossessed the truck in or about October 2010.  After Trompeter failed to reinstate the contract or redeem the vehicle, Ally sold the truck at an auction and applied the sale proceeds to Trompeter's account balance, leaving a deficiency in the amount of $12,246.85.  Lynda Zitka, a Vice President for Ally, attested that any telephone calls on behalf of the company to Trompeter would

have related to Trompeter's default or the debt that he owed Ally pursuant to the contract.

Trompeter's contract contained an arbitration clause on the reverse-side of a two page agreement.  The clause stated the following,

**ARBITRATION CLAUSE**
**PLEASE REVIEW – IMPORTANT – AFFECTS YOUR LEGAL RIGHTS**

1. EITHER YOU OR WE MAY CHOOSE TO HAVE ANY DISPUTE BETWEEN US DECIDED BY ARBITRATION AND NOT IN COURT OR BY JURY TRIAL.

2. IF A DISPUTE IS ARBITRATED, YOU WILL GIVE UP YOUR RIGHT TO PARTICIPATE AS A CLASS REPRESENTATIVE OR CLASS MEMBER ON ANY CLASS CLAIM YOU MAY HAVE AGAINST US INCLUDING ANY RIGHT TO CLASS ARBITRATION OR ANY CONSOLIDATION OF INDIVIDUAL ARBITRATIONS.

3. DISCOVERY AND RIGHTS TO APPEAL IN ARBITRATION ARE GENERALLY MORE LIMITED THAN IN A LAWSUIT, AND OTHER RIGHTS THAT YOU AND WE WOULD HAVE IN COURT MAY NOT BE AVAILABLE IN ARBITRATION.

Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this clause, and the arbitrability of the claim or dispute), between you and us or our employees, agents, successors or assigns, which arise out of or relate to your credit application, purchase or condition of this vehicle, this contract or any resulting transaction or relationship (including any such relationship with third parties who do not sign this contract) shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action.  Any claim or dispute is to be arbitrated by a single arbitrator on an individual basis and not as a class action.  You expressly waive any right you may have to arbitrate a class action. You may choose one of the following arbitration organizations and its applicable rules: the National Arbitration Forum . . . (www.arbforum.com), the American Arbitration Association . . . (www.adr.org), or any other organization that you may choose subject to our approval . . . .

Arbitrators shall be attorneys or retired judges and shall be selected pursuant to the applicable rules. The arbitrator shall apply governing substantive law in making an award.  The arbitration hearing shall be conducted in the federal district in which you reside . . . . We will advance your filing, administration, service or case management fee and your arbitrator or hearing fee all up to a maximum of $1500, which may be reimbursed by decision of the arbitrator at the arbitrator's discretion.  Each party shall be responsible for its own attorney, expert and other fees, unless awarded by the arbitrator under applicable law.  If the chosen arbitration organization's rules conflict with this Arbitration Clause, then the provisions of this Arbitration Clause shall control.  The arbitrator's award shall be final and binding on all parties, except that in the event the arbitrator's award for a party is $0 or against a party is in excess of $100,000, or includes an award of injunctive relief against a party, that party may request a new arbitration under the rules of the arbitration organization by a three-arbitrator panel. The appealing party requesting new arbitration shall be responsible for the filing fee and other arbitration costs subject to a final determination by the arbitrators of a fair apportionment of costs.  Any arbitration under this Arbitration Clause shall be governed by the Federal Arbitration Act (9 U.S.C. § 1 et seq.) and not by any state law concerning arbitration.

You and we retain any rights to self-help remedies, such as repossession.  You and we retain the right to seek remedies in small claims court for disputes or claims within that court's jurisdiction, unless such action is transferred, removed or appealed to a different court.  Neither you nor we waive the right to arbitrate by using self-help remedies or filing suit.  Any court having jurisdiction may enter judgment on the arbitrator's award.  This clause shall survive any termination, payoff or transfer of this contract.  If any part of this Arbitration Clause, other than waivers of class action rights, is deemed or found to be unenforceable for any reason, the remainder shall remain enforceable.  If a waiver of class action rights is deemed or found to be unenforceable for any reason in a case in which class

United States District Court
For the Northern District of California

action allegations have been made, the remainder of
this arbitration clause shall be unenforceable.

DISCUSSION

I. Motion to Compel Arbitration

A. Legal Standard

Under the FAA, 9 U.S.C. § 1 et seq., written agreements that
controversies between the parties shall be settled by arbitration
are valid, irrevocable, and enforceable. 9 U.S.C. § 2. A party
aggrieved by the refusal of another to arbitrate under a written
arbitration agreement may petition the district court which would,
save for the arbitration agreement, have jurisdiction over that
action, for an order directing that arbitration proceed as
provided for in the agreement. 9 U.S.C. § 4. A district court
must compel arbitration under the FAA if it determines that:
1) there exists a valid agreement to arbitrate; and 2) the dispute
falls within its terms. Stern v. Cingular Wireless Corp., 453 F.
Supp. 2d 1138, 1143 (C.D. Cal. 2006) (citing Chiron Corp. v. Ortho
Diagnostic Sys., 207 F.3d 1126, 1130 (9th Cir. 2000)).

The FAA reflects a "liberal federal policy favoring
arbitration agreements." Gilmer v. Interstate/Johnson Lane Corp.,
500 U.S. 20, 25 (1991) (quoting Moses H. Cone Mem. Hosp. v.
Mercury Constr. Corp., 460 U.S. 1, 24 (1983)). However, the FAA
"permits agreements to arbitrate to be invalidated by 'generally
applicable contract defenses, such as fraud, duress, or
unconscionability,' but not by defenses that apply only to

5

arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." AT&T Mobility v. Concepcion, 131 S. Ct. 1740, 1746 (2011).

B. Analysis

Trompeter does not argue that his claims against Ally fall outside of the arbitration clause. Rather, he contends the arbitration agreement is unconscionable and unenforceable under California law.

The party opposing arbitration bears the burden of proving that the arbitration provision is unconscionable. Arguelles-Romero v. Superior Court, 184 Cal. App. 4th 825, 836 (2010). Unconscionability under California law is comprised of two elements, procedural and substantive. Id. at 837. Both must be present for a contract term to be considered unconscionable. Id. "[T]he more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." Armendariz v. Found. Health Psychcare Services, Inc., 24 Cal. 4th 83, 114 (2000).

1. Procedural Unconscionability

Procedural unconscionability focuses on the existence of oppression or surprise. Newton v. American Debit Services, 2012 WL 581318, *6 (N.D. Cal.). "Oppression arises from an inequality of bargaining power that results in no real negotiation and an absence of meaningful choice." Flores v. Transamerica Homefirst,

6

<u>Inc.</u>, 93 Cal. App. 4th 846, 853 (2001). "Surprise involves the extent to which the supposedly agreed-upon terms are hidden in a prolix printed form drafted by the party seeking to enforce them." <u>Id.</u>

Trompeter first argues that the adhesive nature of the contract renders it procedurally unconscionable. "The term [contract of adhesion] signifies a standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it." <u>Armendariz</u>, 24 Cal. 4th at 113. Under California law applicable to all contracts generally, the adhesive nature of a contract is a consideration in determining whether the agreement is unconscionable, and such an agreement will not be enforced if it defies "the reasonable expectations of the weaker or 'adhering' party" or is "unduly oppressive." <u>Id.</u> While the Supreme Court has overturned California law requiring the availability of class-wide relief in arbitration agreements, the Court has indicated that state law bearing on contracts of adhesion remains good law. <u>Concepcion</u>, 131 S. Ct. at 1750 n.6. Although Ally argues that it accepts assignments of contracts without arbitration clauses, this assertion is irrelevant because Trompeter entered into the contract with the dealership. The standardized nature of the contract and its presentation on a "take it or leave it" basis establish a limited degree of procedural unconscionability in the present case.

**United States District Court**
For the Northern District of California

Trompeter also argues that the arbitration agreement is procedurally unconscionable because the relevant clause was placed at the bottom of the back page of the contract.  Although Trompeter signed the agreement in eight different locations on the front page of the agreement, the only signature on the back of the agreement is one belonging to a representative of the dealership.  An arbitration agreement placed in an inconspicuous location on the opposite side of a signature page adds to the procedurally unconscionable nature of the agreement.  See e.g., Gutierrez v. Autowest, Inc., 114 Cal. App. 4th 77, 89 (2003).  On the other hand, in signing the contract, Trompeter agreed to language acknowledging that he read both sides of the agreement, including the arbitration clause on the reverse side.  Trompeter has not attested that he was actually surprised by the arbitration agreement.

Finally, Trompeter argues that Ally failed to provide a copy of the applicable arbitration rules.  See Trivedi v. Curexo Technology Corp., 189 Cal. App. 4th 387, 393 (2010) (noting that numerous cases have held that the failure to provide a copy of the arbitration rules to which an employee would be bound supports a finding of procedural unconscionability).  Ally does not dispute that it never provided arbitration rules to Trompeter.  However, it is clear from the agreement itself that the applicable arbitration rules were not determined at the time the contract was

signed because Trompeter was given the option of choosing the
arbitration provider that he preferred.[1]

Trompeter has established a minimal degree of procedural
unconscionability based on the adhesive nature of the form
arbitration agreement and the lack of opportunity for him to
negotiate its terms.

2. Substantive Unconscionability

"Substantively unconscionable terms may take various forms,
but may generally be described as unfairly one-sided." Little v.
Auto Stiegler Inc., 29 Cal. 4th 1064, 1071 (2003). "One such
form . . . is the arbitration agreement's lack of a modicum of
bilaterality." Id. at 1072 (internal quotation marks omitted).
"Another kind of substantively unconscionable provision occurs
when the party imposing arbitration mandates a post-arbitration
proceeding, either judicial or arbitral, wholly or largely to its
benefit at the expense of the party on which the arbitration is
imposed." Id.

---

[1] Trompeter also argues that the arbitration agreement is
procedurally unconscionable because it provided him with an
illusory choice of arbitration services.  Because this argument
relates to the one-sided nature of the agreement and whether Ally
sought to use the arbitration agreement to gain leverage in the
dispute, the Court considers this issue below, in context of its
substantive unconscionability analysis.  See e.g., Newton, 2012 WL
581318 at *9-10 (addressing the selection of the arbitrator in
connection with substantive, rather than procedural
unconscionability).

United States District Court
For the Northern District of California

Trompeter does not challenge the class action waiver in the arbitration agreement, but asserts that the agreement is substantively unconscionable based on the following provisions: (1) a party does not waive the right to arbitrate by using self-help remedies or filing suit; (2) if the arbitrator's award against a party is in excess of $100,000, that party may request a new arbitration by a three-arbitrator panel under the rules of the arbitration organization; (3) if the arbitration award includes injunctive relief, the enjoined party may demand a re-arbitration by the three-arbitrator panel; and (4) the appealing party requesting a new arbitration shall be responsible for the filing fee and other arbitration costs subject to a final determination by the arbitrators of a fair apportionment of costs.  The Court considers each of these provisions, as well Trompeter's contention that the agreement provided an illusory choice as to the type of arbitration available.

The arbitration agreement provides that a party does not waive the right to arbitrate by using self-help remedies or filing suit in small claims court.  Thus, a creditor could repossess a vehicle or file suit to collect a debt owed by a defaulting car buyer, but still reserve the right to seek arbitration of a dispute in which it was named as a defendant.  As a practical matter, a debtor has no corresponding remedy.  If the consumer stops paying on the debt, his or her vehicle will likely be repossessed and the consumer could be held liable for any

United States District Court
For the Northern District of California

deficiency after disposition of the repossessed vehicle, pursuant to California Civil Code section 2983.2(a). As noted earlier, Trompeter purchased a new truck. The provision of the Song-Beverly Consumer Warranty Act that pertains to defective new motor vehicles, commonly known as the state's "Lemon Law," does not provide for a consumer to discontinue payment on a contract for purchase of the defective new vehicle. See Cal. Civ. Code § 1793.2(d)(2). Rather, if the manufacturer or its representative is unable to repair the vehicle to conform with applicable express warranties after a reasonable number of attempts, the manufacturer must either promptly replace the vehicle with a substantially identical one that functions properly or make restitution in an amount equal to the actual price paid or payable by the buyer, including and excluding certain specified charges. Id. The remedy of total restitution or a replacement of a new vehicle, generally, would not be available in small claims court in light of the limited value of claims permitted there. Thus, it appears that this threshold provision favors Ally at the expense of Trompeter and contributes to a finding of substantive unconscionability.

Trompeter is also correct that the provision that allows a party to seek a re-arbitration by panel if the arbitrator issues an award against that party in an amount exceeding $100,000 favors creditors, such as Ally, over car buyers. Trompeter contends that a defect in the vehicle could give rise to a claim exceeding

$100,000.  A claim by Ally against the purchaser of a single vehicle is unlikely to exceed $100,000.  Ally, however, asserts that by contract and statute a creditor that prevails in an action against a defaulting car buyer is entitled to attorneys' fees and costs and, thus, could obtain an award exceeding $100,000. Trompeter financed $27,931.43 of his truck's purchase price and the litigation necessary to collect on a consumer debt, in general, is not highly complex and, thus, is unlikely to give rise to disproportionately high attorneys' fees and costs, such as an amount that exceeds the value of the debt.

The California Supreme Court's decision in Little supports a finding of substantive unconscionability.  There, the party that imposed an arbitration agreement on a plaintiff employee argued that the $50,000 threshold amount for a right to an arbitral appeal applied even-handedly to both parties.  29 Cal. 4th at 1072-74.  However, the court rejected the argument, finding that the party imposing the arbitration agreement did not adequately explain to the court why the right of appeal should turn on an award threshold.  The court observed that from a plaintiff's perspective the decision to resort to an arbitral appeal is made based on the potential value of the arbitration claim compared to the cost of the appeal, not based on the amount of the arbitration award.  Id. at 1073.  The court determined that, given the absence of a commercially legitimate reason for the threshold requirement and the fact that the party that imposed the arbitration agreement

was the party that set the threshold, it was reasonable to conclude that the party that imposed the threshold did so with the knowledge or belief that it would generally be a defendant who could benefit from a right to appeal limited to high value awards. Id.

In the present case it is likewise reasonable to conclude that the $100,000 threshold was imposed because the drafter believed that such a requirement would serve the creditor, such as Ally, in that it would typically be the defendant in a dispute exceeding the threshold amount. Although the re-arbitration provision in question also allows a party to appeal an arbitrator's determination if the award is zero, even assuming that a consumer and creditor are equally likely to benefit from this threshold amount, the neutrality of that aspect of the appeal provision does not diminish the one-sided nature of the $100,000 threshold. This facet of the arbitration agreement supports a finding of its one-sidedness favoring creditors.

Another aspect of the arbitration agreement identified by Trompeter, the provision that when an arbitrator has awarded injunctive relief an enjoined party may seek re-arbitration by the three-arbitrator panel, also benefits creditors over consumers. If a creditor seeks to block a car buyer's use of the vehicle, the creditor is authorized under the arbitration agreement to repossess the vehicle without proceeding through arbitration or waiving its right to the arbitral forum. Injunctive relief, on

United States District Court
For the Northern District of California

13

the other hand, is a remedy often sought in consumer actions to protect the public from further unlawful actions by a defendant. Thus, compared to creditors, consumers are more likely to seek injunctive relief in a dispute subject to the arbitration agreement.

Furthermore, the arbitration agreement's provision for an appeal when injunctive relief is awarded offers an additional opportunity for delay for the benefit of creditors at the expense of consumers.  Although Ally cites Food & Grocery Bureau of Southern California v. Garfield, 18 Cal. 2d 174, 176-77 (1941), for the proposition that an appeal does not normally stay the effectiveness of an injunction, the case states that a mandatory injunction is automatically stayed by an appeal under California law, whereas a self-executing, prohibitory injunction, in general, is not stayed by an appeal.  A creditor could nevertheless seek a stay of an injunction pending appeal to a three-arbitrator panel.

On balance, the provision allowing an appeal of an award granting injunctive relief is designed to benefit the creditor and, thus, contributes to a finding of substantive unconscionability.

Further, a finding of substantive unconscionablity is supported by the provision that a party requesting re-arbitration shall be responsible for the filing fee and other re-arbitration costs, subject to a final determination by the arbitrators of a fair apportionment of costs.  See Little, 29 Cal. 4th at 1080

United States District Court
For the Northern District of California

("Nothing in the FAA prevents states from controlling arbitration costs imposed by adhesive contracts so that the remedy of prosecuting the state statutory or common law public rights through arbitration is not rendered illusory.").

Ally argues that under <u>Green Tree Financial Corp.-Alabama v. Randolph</u>, 531 U.S. 79 (2000), it is of no significance that the party seeking an appeal must advance arbitration filing fees and costs for an appeal. However, in <u>Green Tree</u> the arbitration agreement was silent with respect to costs and fees. <u>Id.</u> at 90. Thus, the Court determined that the plaintiff had not carried her burden to establish the likelihood that she would be required to bear prohibitive arbitration costs if she pursued her claims. <u>Id.</u> at 90-92. Notably, the Court expressly declined to resolve how detailed the showing of prohibitive expense must be by a party seeking to avoid arbitration. <u>Id.</u> at 92.

In this case, because the National Arbitration Forum refuses to hear consumer disputes, the American Arbitration Association rules are the best indicator of the costs that Trompeter would incur if he were to pursue an appeal. Ally does not dispute that, under the AAA's fee schedule, the minimum fees for any case having three or more arbitrators includes a $2,800 initial filing fee and a $1,250 final fee, as well as the hourly rate for three arbitrators. The arbitration agreement provides that Ally will advance up to a maximum of $1,500 for a party's filing, administration, service or case management fee and the

arbitrator's fee or hearing fee.  However, this provision for an advance appears to relate to the initial arbitration and not the appeal.  Thus, it is not clear that an advance is available for fees associated with pursuing an appeal.  Nor does the arbitration agreement provide for any other procedure or criteria for determining how much a consumer can afford.  Gutierrez, 114 Cal. App. 4th at 91-92 (holding that the absence of a provision for the consumer to obtain a cost waiver or reduction, when the judicial system provides an opportunity to make such requests, contributes to a finding of substantive unconscionability).  Trompeter has established that the imposition of substantial fees and costs in pursuit of an appeal under the arbitration agreement contributes to a finding of substantive unconscionability.

Finally, as noted earlier, Trompeter argues that the arbitration agreement is unconscionable because it provided him with an illusory choice of arbitration services.  "A single arbitrator unilaterally selected by a contracting party adverse to the other is presumed to be biased."  Sehulster Tunnels/Pre-Con v. Traylor Bros., Inc./Obayashi Corp., 111 Cal. App. 4th 1328, 1341 (2003).  As previously noted, the NAF does not handle consumer disputes, leaving the AAA as the only arbitral forum specifically identified in the arbitration agreement.  However, the agreement also allows Trompeter to select any other organization to handle the arbitration, subject to Ally's approval.  Trompeter has not established that there are no other suitable organizations and,

16

therefore, it is not clear that the choice presented is actually illusory.

Nonetheless, Trompeter has demonstrated that the arbitration agreement is substantively unconscionable based on the other factors discussed above. Multiple elements render the agreement procedurally and substantively unconscionable, such that the arbitration agreement is void under California law.

### 3. Severability

Although Ally asserts that the unconscionable aspects of the agreement may be severed, as in Armendariz, 24 Cal. 4th at 124, there are multiple unconscionable provision in the agreement. As such, the agreement is "tainted with illegality," and to enforce it would encourage overreaching by creditors drafting consumer contracts. Id. at 124 n.13. In addition, because two of the unconscionable provisions in the arbitration agreement relate directly to circumstances in which the right of appeal attaches following an arbitration award, they are not collateral to the agreement and extirpating them by means of severance would amount to a reformation of the agreement. Id. at 124-25. Severance is unwarranted.

### 4. Concepcion and Kilgore

Ally argues that the Supreme Court's decision in Concepcion and the Ninth Circuit's ruling in Kilgore v. KeyBank, National Association, 673 F.3d 947 (2012), compel this Court to enforce the

United States District Court
For the Northern District of California

1  arbitration agreement because invalidating the agreement offends

2  the principles underlying the FAA.

3      Ally's reading of Concepcion is overbroad.  Concepcion

4  overturned the rule established by the California Supreme Court in

5  Discover Bank v. Superior Court, 34 Cal. 4th 148 (2005), which

6  deemed unconscionable under California law consumer arbitration

7  agreements containing a provision waiving the right to class-wide

8  arbitration.  The Court held that the FAA preempted the Discover

9  Bank rule, reasoning that mandatory class arbitration sacrificed

10 the key advantages associated with dispute resolution through

11 arbitration.  131 S. Ct. at 1750-52.  Specifically, class

12 arbitration is longer and more expensive, requires greater

13 formality, and increases the stakes for defendants, as compared to

14 bilateral arbitration.  Id. at 1751-52.  Although the Court stated

15 that nothing in § 2 of the FAA "suggests an intent to preserve

16 state-law rules that stand as an obstacle to the accomplishment of

17 the FAA's objective," it also acknowledged that "§ 2 preserves

18 generally applicable contract defenses."  Id. at 1748.  Concepcion

19 does not preclude this Court's finding that the arbitration

20 agreement in the present case is unconscionable because the

21 finding does not undermine the fundamental attributes of

22 arbitration as an alternative form of dispute resolution that is

23 neutral, speedy, economical and informal.  The Court's review of

24 the arbitration agreement applies the generally applicable

United States District Court
For the Northern District of California

contract principle of unconscionability and, thus, does not offend the FAA's policy objective favoring arbitration.

Nor does the Ninth Circuit's decision in <u>Kilgore</u> change the outcome of this Court's determination to deny enforcement of the arbitration agreement.  <u>Kilgore</u> held that the FAA, in light of the Supreme Court's decision in <u>Concepcion</u>, preempted the California state law principles announced in <u>Broughton v. Cigna Healthplans of California</u>, 21 Cal. 4th 1066 (1999), and <u>Cruz v. PacifiCare Health Systems, Inc.</u>, 30 Cal. 4th 303 (2003).  The <u>Broughton-Cruz</u> rule prohibited the arbitration of claims for public injunctive relief.  <u>Kilgore</u>, 673 F.3d at 959.  The Ninth Circuit reasoned that, although <u>Concepcion</u> did not address the question of the arbitrability of a public injunction remedy, under the Supreme Court's decision, state public policy interests do not trump the FAA when the state policy prohibits arbitration of a particular type of claim.  <u>Id.</u> at 963.  Thus, the Ninth Circuit rejected the state public policy rationales that supported the <u>Broughton-Cruz</u> rule, namely that adjudication, rather than arbitration, better served the state's interest in enforcing laws, such as the Unfair Competition Law, designed to protect the public interest at large, rather than to redress or prevent injury to a particular plaintiff.  <u>See id.</u> at 960-63.

The present case is distinguishable from <u>Kilgore</u> because it does not involve a categorical rule barring arbitration of a specific type of claim or remedy and the Court's ruling does not

rest on an independent state public policy disfavoring

arbitration.  The Court has not determined that the arbitration

agreement is unenforceable because Trompeter has sued for

injunctive relief under the UCL or California's Privacy Act.  As

noted earlier, the Court's unconscionability analysis does not

disfavor arbitration as a forum for dispute resolution generally.

Neither Concepcion nor Kilgore precludes a finding that the

arbitration agreement here is unconscionable.

II. Motion for a Stay

Ally has moved to stay this action pending the California

Supreme Court's disposition of the appeal in Sanchez, 201 Cal.

App. 4th at 74.  In Sanchez, the California Court of Appeal found

unconscionable and unenforceable the same arbitration clause in

the same form contract for a car purchase at issue in this case.

On March 21, 2012, the California Supreme Court granted the

petition for review in Sanchez.  Because Sanchez is no longer

citable, the Court has not relied on it to resolve the motion to

compel.

"A stay is not a matter of right, even if irreparable injury

might otherwise result."  Nken v. Holder, 556 U.S. 418, 433 (2009)

(citation and internal quotation marks omitted).  Instead, it is

"an exercise of judicial discretion," and "the propriety of its

issue is dependent upon the circumstances of the particular case."

Id. (citation and internal quotation and alteration marks

omitted).  The party seeking a stay bears the burden of justifying

United States District Court
For the Northern District of California

the exercise of that discretion. <u>Id.</u> at 433-34. "A party seeking a stay must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of relief, that the balance of equities tip in his favor, and that a stay is in the public interest." <u>Humane Soc. of U.S. v. Gutierrez</u>, 558 F.3d 896, 896 (9th Cir. 2009). The first two factors of this standard "are the most critical." <u>Nken</u>, 556 U.S. at 434. Once these factors are satisfied, courts then assess "the harm to the opposing party" and weigh the public interest. <u>Id.</u> at 435.

Ally contends that a stay is warranted to protect it from burdensome expenses and procedures in litigating this action, and to prevent the unnecessary waste of resources, including the Court's time. Ally asserts that a stay will prevent prejudice of its contractual rights under the arbitration agreement.

With respect to the first factor, Ally has not established that it is likely to succeed on the merits. The California Supreme Court's decision to grant review does not indicate whether it will affirm or reverse the decision in full or in part, or remand the action for further proceedings. Having reviewed <u>Sanchez</u> and considered the arbitration agreement independently from that decision, the Court has found that the contention that the arbitration clause is unconscionable is well-supported by long-standing case law. Moreover, the finding of

unconscionability is not foreclosed by the recent decisions in Concepcion and Kilgore.

Although allowing the case to proceed will require Ally to incur some costs of litigation, Ally has not established that it is likely to suffer irreparable harm in the absence of a stay of the Court's ruling on its motion to compel arbitration. Most likely, the next steps in the litigation will require the exchange of initial discovery and perhaps motion practice. Ally has not demonstrated that the procedures in arbitration provide for less costly discovery and motion practice. It is Ally's burden to show that a stay is warranted, and it has not made a clear showing of irreparable harm.

On the other hand, there is evidence that a delay in resolving the action could cause harm to Trompeter and the putative class. This case involves allegations that Ally or its agents surreptitiously recorded telephone calls made to numerous consumers, including out-of-state consumers to whom Ally or its agent placed a call from within California. Critical information and records regarding the phone calls and related policies and practices could be lost if the proceedings are stayed. Sanchez is likely to remain before the California Supreme Court for at least a year, and in Brinker Restaurant Corp. v. Superior Court of San Diego County, 165 Cal. App. 4th 25 (2008), aff'd in part and reversed in part, 53 Cal. 4th 1004 (2012), the court required approximately three and a half years to resolve the dispute. A

stay in this action is likely to prejudice Trompeter in pursuing his putative class claims.  Nor has Ally demonstrated that a stay serves the public interest.  The Court declines to stay this action.

Pursuant to 9 U.S.C. § 16(a)(1)(B), Ally has a right to an interlocutory appeal of an order denying a petition to compel arbitration.  See Green Tree, 531 U.S. at 86 (noting that "§ 16 generally permits immediate appeals of orders hostile to arbitration, whether the orders are final or interlocutory, but bars appeals of interlocutory orders favorable to arbitration.").  Thus, Ally may appeal this Court's order and request a stay of the litigation pending the Ninth Circuit's resolution of the appeal.  See Britton v. Co-Op Banking Grp., 916 F.2d 1405, 1409-10 (9th Cir. 1990) ("[A]n appeal of an interlocutory order does not ordinarily deprive the district court of jurisdiction except with regard to the matters that are the subject of the appeal.").  If the case is not stayed, discovery and motions may proceed concurrently with the California Supreme Court's consideration of Sanchez and the Ninth Circuit's consideration of this order.  If trial approaches, Ally may again request a stay.  If Sanchez bars this litigation and requires arbitration, the arbitration could be held promptly, with discovery having been completed.

CONCLUSION

Ally's motion to compel arbitration or, in the alternative, dismiss the complaint, and its motion for a stay of the proceedings are denied.  The parties shall appear for a case management conference on June 6, 2012 at 2:00 pm.

IT IS SO ORDERED.


Dated: 6/1/2012

CLAUDIA WILKEN
United States District Judge